BARHAM, Justice.,
*568 ' Ten expropriation cases were originally ■ consolidated for trial, these five were appealed by the plaintiff, and we granted writs on the application of the plaintiff, Louisiana Power and Light Company, and' consolidated the five cases for argument. The relator complains that the award of just compensation in each of the cases is excessive, and that the award of severance damages upon one tract of land in one of the cases is excessive. These awards made, by the trial court were affirmed by the Court of Appeal. 220 So. 2d 482, 484, 485, 486. None of the defendants made application to this court, so there can be no increase in the awards and the question of severance damages in those cases where not allowed is no longer an issue.
Louisiana Power and Light Company seeks a 100-foot servitude across various tracts owned in full or in part by these defendants for the construction, maintenance, 'and operation of a transmission line or lines consisting of a single, double, or triple line of poles, towers, and structures with such wires, cables, conductors, and other appurtenances necessary for the transmission of electric energy or communication.
The subject properties are situated between Norco and Destrehan. The location of the servitude is about a mile to a mile and a half from the Mississippi River between the Illinois Central Railroad and the Louisiana and Arkansas Railroad, the latter railroad being almost adjacent to Airline Highway (U. S. 61). This servitude generally parallels a United Gas Company pipeline servitude and a Shell Oil Company pipeline servitude and partially overlaps the latter servitude for almost its entire length. The area along the river is rapidly expanding in response to industrial requirements. The subject property, now cutover hardwood land susceptible to overflow, is projected as commercial, residential, and industrial property in the near future although such use would require elevation and drainage of the property.
The trial court and the appellate court found that the highest and best use of the land taken was for the growing of hardwood timber. From a study of the expert testimony as well as from the concession of counsel for the parties in their arguments, we learn that all lands involved are similar in topography arid location, and the highest and best use which can be attributed to all of the tracts is for speculative investment for future development into residential, commercial, and industrial sites. (The defendant Elfer’s Tract No. 2 is an exception which will be treated separately.)
Only three of the witnesses offered as experts by any of the parties gave estimates of value for establishing just compensation which were based upon competent investigation, factual determinations, *570 and appraisal methods. Max J. Derbes, although assigning the highest and best use of the land for pasturage and timber growing,. actually used comparables which reflected the market value of property which had been purchased for development into commercial, residential, and industrial complexes, and the final market value assigned by him to the subject properties is far in excess of a value which could be placed upon sometime inundated scrub hardwood timber land such as this for its timber-growing value alone. We find, therefore, that his estimate of values actually reflected his opinion of market value based upon what we consider to be the highest and best use of the property. Mr. Derbes used the market data approach, and after adjusting his comparables to the subject property he arrived at a $750.00 per acre value.
E. A. Tharpe II, a qualified realtor-appraiser, assigned highest and best use of the land as speculative investment for the purpose of commercial, industrial, and residential development. He also used the market data approach, and after adjusting his comparables he assigned $1000.00 per acre as market value for the subject property.
The only other witness who gave an opinion with sufficient foundation to be accorded weight as expert evidence was George Hubert Dejean. Mr. Dejean, although using the market data approach, relied upon an entirely different set of comjsarables and adjusted them to arrive at a $2492.50 per acre value which we round off to $2500.00.
Rejecting the other witnesses’ testimony and finding no reason to test the credibility of these three experts witnesses or the weight to be accorded their testimony, we find it appropriate to average the three estimates, even though they vary considerably, in order to assign market value for the subject properties. We assign market value of all the subject property (except Elfer Tract No. 2) at $1416.67 per acre.
Plaintiff contends that it was error for both courts below to award 100 per cent of land value for the servitude alone when full ownership of the land was not taken. It argues that ownership of property entails the ownership of a bundle of rights, that the exercise of a servitude such as this one for the construction, maintenance, and repair of electric transmission lines carried on poles, structures, and towers leaves a number of rights unencumbered and advantageous to the owner, and that the landowner therefore has reserved to him considerable property value.
The defendants urge in brief that Louisiana Power & Light Company v. Simmons, 229 La. 165, 85 So.2d 251, which cites Texas Pipe Line Company v. Barbe, 229 La. 191, 85 So.2d 260, is supportive of *572 their contention for the award of 100 per cent of the value of the land for the mere granting of a servitude. Both the Simmons and the Barbe cases rely upon and cite Texas Pipe Line Co. v. National Gasoline Co. of Louisiana, 203 La. 787, 14 So.2d 636. That case involved a servitude for a “high-pressure gasoline line”, and the organ of the court, while accepting the fact that the value of a 20-foot servitude is less than the total value of the land included in the right of way, stated that there should not be much difference between those values when the rights granted for that particular- servitude were so all-inclusive as to exclude the defendant "from any use or benefit of the area covered by the right-of-way”. (Emphasis supplied) The Simmons and Barbe cases rely-upon that holding without either - noting, or considering the above quoted qualifying terminology-
After review of the cases cited above and other jurisprudence both in the Supreme Court and in the Courts of Appeal', we make the following conclusion. Where the servitude requirements are for use of the land for the construction and maintenance of an electrical transmission line, for ingress and egress, and for clearance- of only such obstructions as might interfere .with or constitute a hazard to the operation- of the transmission line, and where the highest and best use of the property. included within the servitude is for speculatiye investment, the landowner does, out of the whole bundle of rights of ownership, retain property rights which have a fixed value. Even counsel for the defendants admitted in argument before us that these landowners retain valuable ownership rights in the lands after the servitude grant.
The servitude across the above properties overlaps and extends upon a portion of an existing Shell Oil Company servitude. It is the contention of plaintiff that since a portion of its servitude is encompassed within the preexisting servitude, the assignment of value for its power line servitude which is within the preexisting servitude should be a reduced percentage because that land -is already encumbered. We agree with this contention. Since some of the defendants’ rights of ownership have already been dismembered by the first ser-, vitude, there are fewer rights of ownership retained and affected by the proposed servitude and less value should be allocated to this land.
For the reasons above we assign as just compensation for the defendants’ land within the servitude which is not encumbered 80 per cent of its market value- (80 per cent of $1416.67 per acre, or $1133.34 per acre). For that portion of the proposed servitude which is encumbered with a preexisting servitude we assign as just compensation 25 per cent of the total market value (25 per cent of $1416.67 per acre, or $354.17 per acre)-..
*574 Elfer Tract No. 2 requires 'a separate consideration for assessment of value and severance damage because of its location. The servitude requires a frontage of 82.27 feet of Airline Highway on Elfer Tract No. 2. However, there is in existence along the full front of this property a Louisiana Power and Light servitude. 24 feet in depth which is now utilized for a transmission line. The new servitude will, of course, extend into this portion of the existing servitude and encompass 0.411 acre of it. In addition, the new servitude will encompass 0.714 acre that is now unburdened by any servitude. The entire servitude is a triangle 157.53 feet on the west boundary of the Elfer land, 82.27 feet on the front of Airline' Highway, and 120.6 feet from the front back to the west boundary of the Elfer property, containing 0.1126 acre. Although this land fronts on Airline Highway it is located in an area where there is considerable frontage available and it is low, partially inundated land' which would require filldirt and drainage for development. The entire tract is very deep, but the experts’ testimony reflects that the 2.5 acres between the highway and a railroad is all that is benefited by fronting on the highway.
' We reject the testimony of the son of the owner as being opinion unfounded in fact and conclusion erroneously projected. Mr. Derbes. has assigned full land value for the servitude based upon $41.00 per front foot for the taking of the entire triangle, encumbered and unencumbered, adjusts for the peculiar shape, size and other considerations, -and arrives at a value of $1385.00 as just compensation for the portion taken. He does not allow severance damages. On the other hand, Mr. Tharpe uses front-foot value of $75.00 for the land between the highway and the railroad, and after considering this property without the new encumbrance, he assigns a total before taking value to the approximately 2.5-acre tract. Then considering the portion taken, the preexisting servitude, just compensation for the portion taken and severance damage to the remainder, he arrives at a value after the taking. The difference in these two values includes just compensation and severance damage and amounts to $1415.00.
We are of the opinion that the $75.00 per front foot market value used by Mr; Tharpe is a fair estimate of value for the property. However, his calculation and reasoning in assigning the before and after values are not satisfactory for assigning just compensation and severance damage. The total subject property which is affected by the servitude' is comprised of 2.5 acres, more or less, having a depth of approximately 730 feet, a width of approximately 112.58 feet and a frontage of 156.97 feet. Using Mr. Derbes’s calculations and Mr. Tharpe’s values, such property would be worth $75.00 per front foot if it were a perfect *576 rectangle. Being a reverse triangle, it is .assigned a value of 80 per cent of $75.00, or $60.00 per front foot. Since 52.6 per cent (which we round to 53 per cent) of the whole is allowed for the first 130 feet of a piece of property similar to the subject property and since the irregular part taken would approach this depth in average, we will assign 53 per cent of the $60.00 per .front foot or $31.80 for the 82.27 front feet affected or $2616.19 for the entire triangle of land affected by the servitude.
However, one-third of this is already encumbered with a similar servitude and the new servitude will only require tie-in poles and necessary accessories. On this already encumbered front 24 feet or 0.04 acre (approximately one-third of the servitude) we assign 25 per cent of full land value for the new servitude, or $218.-.02. (I/3 x $2616.19 x .25) To the remaining two-thirds of the servitude we assign an 80 per cent of value for the servitude, or $1395.30. (¿/j x $2616.19 x .80) Thus based upon 20 per cent of value for the land previously encumbered and 80 per cent of value for the land unencumbered we assign $1613.32 as just compensation for the servitude. Contrary to Mr. Derbes’s contention and in accord with Mr. Tharpe’s testimony we find some consequential or .severance damage to the remainder of the front 2.5 acres of this tract of land. We assign 5 per cent severance damage to this remainder (156.97 x $75.00 x .05) * and round it off so that we make a total award for Elfer Tract No. 2, just compensation and severance damage, in the amount of $2200.00.
For all of the reasons above assigned the following judgments are hereby rendered :
Louisiana Power and Light Company v. Dr. Myles K. Gaupp (District Court Docket No. 9159) : Just compensation for the defendant’s one-fourth interest in 0.18 acre is calculated as follows: !4 of [(0.11 acre unencumbered x $1133.34) + (0.07 acre encumbered x $354.17)] = $37.36. The judgments of the trial court and the Court of Appeal are amended so as to make the award for just compensation to this defendant $37.36, and as thus amended the judgments are affirmed. Costs in this court are to be paid by the defendant.
Louisiana Power and Light Company v. William A. Elfer (District Court Docket No. 9165): As to Tract No. T, just compensation is calculated as follows: (1.36 acres unencumbered x $1133.34) + (0.59 acre encumbered x $354.17) = $1750.30. As to Tract No. 2, just compensation for the 0.1126 acre taken and severance damages are calculated and fixed above at $2200.00. The judgments of the trial court *578 and the Court of Appeal are amended so as to make the total award for just compensation and severance damages to this defendant $3950.30, and as thus amended the judgments are affirmed. Costs in this court are to be paid by the defendant.
Louisiana Power and Light Company v. George A. Lasseigne, Jr., et al. (District Court Docket No. 9168) : Just compensation for these defendants’ %b interest in 1 acre is calculated as follows: %s of [(0.75 acre unencumbered x $1133.34). + (0.25 acre encumbered x $354.17)] = $500.-56. The judgments of the trial court and the Court of Appeal are amended so as to award these defendants as just compensation $500.56, and as thus amended the judgments are affirmed. Costs in this court are to be paid by the defendants.
Louisiana Power and Light Company v. Kathryn C. Briede, Wife of/and Dr. Benjamine Cromwell Gore (District Court Docket No. 9169) : Just compensation for the lands expropriated is calculated as follows: As to Tract No. 1 (4.72 acres): (2.83 acres unencumbered x $1133.34) + (1.89 acres encumbered x $354.17) = $3876.-73. As to Tract No. 2 (0.46 acre) : (0.28 acre unencumbered x $1133.34) + (0.18 acre encumbered x $354.17) = $381.09. As to Tract No. 3 (2.39 acres) : (1.55 acres unencumbered x $1133.34) + (0.84 acre encumbered x $354.17) = $2054.18. Total award of just compensation to these defendants is therefore $6312.00. The judgments of the trial court and the Court of Appeal are amended so as to award these defendants just compensation of $6312.00, and as thus amended the judgments are affirmed. Costs in this court are to be paid by the defendants.
Louisiana Power and Light Company v. Alfred W. Brown (District Court Docket No. 9170): Just compensation for 2.17 acres expropriated is calculated as follows: (1.34 acres unencumbered x $1133.34) + (0.83 acre encumbered x $354.17) = $1812.-64. The judgments of the trial court and the Court of Appeal are amended to award just compensation to this defendant of $1812.64, and as thus amended the judgments are affirmed. Costs in this court are to be paid by the defendant.

 We advisedly do not apply the 80 per cent disadvantage for shape. Our assignment of 5 per cent of value for severance damage considered this element.