290 So.2d 748 (1974)
CITY OF BATON ROUGE and Parish of East Baton Rouge
v.
DOWNTOWN INVESTMENT CORPORATION.
No. 9701.
Court of Appeal of Louisiana, First Circuit.
February 11, 1974.
Rehearing Denied March 22, 1974.
*749 Robert L. Kleinpeter, Baton Rouge, for appellants.
Charles William Roberts, Baton Rouge, for appellee.
Before LOTTINGER, BLANCHE and CRAIN, JJ.
CRAIN, Judge.
The matter before us involves an expropriation suit in which plaintiff-appellee, City of Baton Rouge and Parish of East Baton Rouge seek to expropriate the property of defendant-appellant, Downtown Investment Corporation. The right to expropriate was not contested, and the whole property was taken so there were no severance damages to establish. Consequently, the sole issue presented was the value of the property expropriated to provide "just compensation" for the defendant-appellant. After a trial on the merits, the trial court awarded the appellant the sum of $250,823.50 as compensation for the property taken and from this decision the defendant perfected its appeal. The plaintiff also appealed seeking a reduction of the award.
The property taken consists of 63,535 square feet situated in the City of Baton Rouge downtown area in a section known as Beauregard Town. It is bounded on the north by America Street, on the east by Repentance Street, on the south by Louisiana Avenue, and on the west by Front Street. On the property is situated a two-story brick building now abandoned, a well tower, well, and pump.
The plaintiff offered the sum of $197,060.00 for the property and the defendant-appellant seeks the sum of $881,736.00. The findings of the trial court from the expert testimony adduced at trial are contained in his reasons for judgment which we quote with approval as follows:
"Plaintiffs adduced the testimony of two experts in real estate appraisal, Messrs. Chester Driggers and Julius Bahlinger, III. Defendant also used two, Messrs. John LeJeune and Kermit Williams. Mr. Driggers found the highest and best use of the property was *750 (sic) the light industry, apartments, commercial or a combination of these. Mr. Bahlinger felt that it was for commercial and/or high-rise apartment construction. Mr. LeJeune said it was most suitable for a multifamily housing project. Mr. Williams stated that the highest and best was for a multistory building for commercial. The various estimates of just compensation are listed as follows:

 LAND IMPROVEMENTS TOTAL 
 Driggers $196,960.00 $ 100.00 $197,060.00
 Bahlinger 190,605.00 1,000.00 191,605.00
 LeJeune 856,736.00 --0-- 856,736.00
 Williams 816,438.00 --0-- 816,438.00

In making his appraisal, Mr. Driggers used seven comparables as follows:

 PER
 VENDOR VENDEE YEAR SALES PRICE AREA SQ. FT.
 1. Cangelosi Ruhr Enter. 1968 $ 65,000.00 15,744 $4.12
 2. Lavigne Benton 1964 150,000.00 24,576 6.10
 3. Favaron Gulf States 1968 7,107.00 1,280 5.52
 4. Gerome Gulf States 1968 8,000.00 3,136 2.55
 5. Hernandez Gulf States 1967 12,000.00 3,776 3.18
 6. Brewer Guidry 1968 32,867.00 6,825 4.80
 7. Creamer Phillips Oil 1967 18,000.00 3,443 5.27

The first sale was adjusted downward for size and shape to an indicated value of subject property of $3.12. The second was adjusted upward for time and downward for location, size and shape to an indicated price of $3.10. The third, fourth and fifth sales were considered together as a plottage situation to arrive at an average price of $3.31, which was adjusted downward for time, location and condition of sale to arrive at an indicated value of $3.01. The sixth sale was adjusted downward for location and upward for time to an indicated value of $3.05. The last sale was adjusted downward for utility as a service station site to an indicated value of $3.02. Mr. Driggers then concludes that the unit value of subject property is $3.10 per square foot for a total of $196,960.00. To this he adds a nominal value of $100.00 for improvements.
Mr. Bahlinger uses the following comparables:

 PER
 VENDOR VENDEE YEAR SALES PRICE AREA SQ. FT.
 1. Cangelosi Ruhr Enter. 1968 $ 65,000.00 15,744 4.12
 2. Lavigne Benton 1964 150,000.00 24,576 6.10
 3. Alesce Lipsey 1968 10,000.00 4,096 2.44
 4. B. R. Bank Schwing 1971 45,000.00 13,870 3.24

He adjusts the first sale upward for time and downward for location and size to an indicated value of $3.00. The second sale was adjusted upward for time and downward for location and size. The next sale was adjusted upward for *751 time and location and downward for size to an indicated value of $3.00. The fourth comparable was adjusted downward for location and size for an indicated value of $3.05. He concludes that the subject property is worth $3.00 per square foot for a value of $190,605.00 to which he adds a relatively nominal value of $1,000.00 for improvements for a total of $191,605.00.
Mr. LeJeune used a list of 32 comparables, the majority of which involved the purchasing of plots for the Attorney's Building, the Baton Rouge Bank Building, the American Building and the Louisiana Office Building as well as the so-called Barton Assemblage. He stated that he relied mainly on the following sales:

 PER
 VENDOR VENDEE YEAR SALES PRICE AREA SQ. FT.
 1. Miranda Barton 1965 $ 20,000.00 2,560 $ 7.81
 2. Overstreet Barton 1965 22,500.00 2,048 10.99
 3. Pick Hotel Capbank 1966 315,000.00 21,649 14.55
 4. Henning Ellison 1970 67,500.00 8,192 8.24
 5. Olinde Capital
 City Press 1970 182,000.00 12,077 15.07

His main emphasis was on the fifth comparable in arriving at the conclusion that the subject property was worth $13.50 per square foot for a total of $856. 736.00. He so concludes even though he felt the subject property was superior because of size. He stated that the improvements added nothing to the value.
Mr. Williams also uses as comparables the assemblage of the ground for the Louisiana National, Louisiana Office, the American Bank & Trust, and the Baton Rouge Bank and Trust Company Buildings. According to his testimony his information was:

 AVERAGE
 PRICE
 TRANSACTIONS PER SQ.
 FT. 
 Louisiana National Bank 5 $12.62
 Louisiana Office Building 3 16.58
 Baton Rouge Bank 9 9.98
 American Bank 9 13.40

He concludes that the assigned value of the subject property to be $12.85 per square foot. He deducted a $19,000.00 estimated demolition cost to arrive at a value of $816,438.00 for the property."
The trial court in making its decision found that many of the comparable sales adduced by the defendant's experts, including property at the intersection of Florida and Third, and the property purchased as plottage for the Louisiana National Bank and the American Bank & Trust Company, the Louisiana Office Building, the Baton Rouge Bank and Trust Company and the Attorneys Building were not comparable. The trial court felt that these various properties were located in what could be termed the "commercial-financial" area of the City of Baton Rouge which is not comparable to the area where the subject property is located which is described as an area characterized by abandoned buildings where there has been little construction in the past several years.
The trial court selected the 1968 sale of property from Cangelosi to Ruhr Enterprises as being the most comparable. The property forming the subject of this sale is located in the northeast corner of the block forming the expropriated property. This property sold for $4.12 a square foot. The trial judge noted that it was smaller in area than the defendant-appellant's tract, but that it is situated closer to the financial-commercial district. Using the Ruhr property as a starting point, the trial court valued the subject property at $4.50 a *752 square foot, then deducted therefrom the cost of demolition of the old building on the property, $33,500.00, and the cost of filling the old water well, $1,584.00. These latter items totaled $35,084.00 and when deducted from the value of the property resulted in a net value of $250,823.50. We note that the parties agree regarding the necessity for demolition of the old buildings and the filling of the well.
Defendant contends first that the plaintiff's experts were not as well qualified as its experts and that their opinions and testimony should therefore be discounted. We do not agree. The record reflects that the persons giving expert opinions were recognized as being qualified by the trial court and we find no error in his decision in this regard.
Defendant next contends that the trial court substituted its judgment for that of the experts, and consequently the judgment of the trial court is not based on the evidence. We disagree. After considering the testimony of all the experts, the trial court concluded that the correct approach to the problem is the market data approach, and he then analyzed all of the comparables used by the experts in reaching a valuation based on this approach. He decided that the best comparable is the sale by Cangelosi to Ruhr Enterprises for the sum of $4.12 per square foot in 1968. Actually, it would be approaching the absurd not to give this sale the greatest weight since it is a sale of a portion of the block which is now being expropriated.
There was disagreement between the experts as to whether this most comparable sale should be adjusted upward or downward with reference to the subject property, the plaintiff's appraisers taking the former view, and defendants the latter. The trial judge resolved the conflict between the experts very precisely as follows:
". . . Instead the court did then believe and now believes that the best comparable was the sale from Cangelosi to Ruhr Enterprises, used by Messrs. Driggers and Bahlinger. It was in the same block with subject property and had much the same physical characteristics. It is true that it was a 1968 sale, was of smaller size and did not front on all four streets. It is true, too, that the court did not accept the contention that the Ruhr sale had to be adjusted downward for comparison with subject property as was advanced by Messrs. Driggers and Bahlinger. Instead the court came to the conclusion that it was required to make a minor upward adjustment of the sale price of the Ruhr property in order to arrive at the just compensation for the subject property. The court does not believe that it has to accept as its findings the testimony of any one group of witnesses or any one witness, without limitation or qualification or without applying thereto its own reasoning and logic.
The testimony was directly contradictory as to whether the large size of subject property should result in plus or minus adjustment. The court did make a small adjustment for size, frontage and time but cannot accept the contention that the large size of the tract should result in a multiplication factor of two (2) or three (3) or more . . .". (Emphasis added)
The trial court used the obviously correct comparable in reaching its valuation, and our review of the testimony of the experts leads us also to the conclusion that the large adjustment downward made by plaintiff's experts, and the large adjustment upward made by defendant's experts are both extreme and incorrect. To require the trial court to accept the total adjustment of either of these groups of experts would require him to reach a wrong conclusion merely because one expert opinion might be closer than another. Under these circumstances the trial court was correct in weighing all the opinions and reaching his own conclusion. State, Department of Highways v. Mayer, 257 So.2d 723 (La.App. 1st Cir. 1971). We find no error in the final decision valuing the property at $4.50 per square foot.
*753 Appellant cites as error the trial court's refusal to permit the introduction of additional evidence on a motion for a new trial, which evidence appellant complains was subpoenaed but not furnished at the original trial. The evidence consists of a consent judgment between plaintiff and Fred G. Denton, Sr. with reference to a piece of property in the same area, but better located than the property of appellant.
The trial court is vested with great discretion in granting a new trial. Ardoin v. Robinson, 129 So.2d 105 (La. App.1961). A review of the record reveals that in considering the sales whereby Mr. Benton purchased the property subsequently expropriated, the experts who compared it at all agreed that the subject property is greatly inferior and for various reasons a large downward adjustment of the Benton property would be required to make it comparable to the property of appellant. Consequently, we find no abuse of the trial court's discretion in refusing to allow the additional evidence on the motion for new trial.
For the above reasons, we affirm the trial court's decision, cost of this appeal to be paid by defendant-appellant.
Affirmed.