328 So.2d 812 (1976)
Jefferson D. PENNINGTON
v.
Philip PANEPINTO et al.
No. 10604.
Court of Appeal of Louisiana, First Circuit.
March 1, 1976.
*813 Gerald A. Bosworth, Houma, for appellant.
Donald L. Peltier, Thibodaux, for Panepintos.
Ralph L. Barnett, Gretna, for A. Williams.
Larry P. Boudreaux, Thibodaux, for State Farm & Casualty Ins. Co.
Before LANDRY, COVINGTON and PONDER, JJ.
PONDER, Judge.
This is a suit for damages for a battery arising out of a shooting incident that occurred in the early afternoon of October 27, 1973, at the Rainbow Inn located at Pointe-Aux-Chien, Louisiana. Plaintiff, Jefferson D. Pennington, was the victim of the shooting. Defendants are Abdon Williams, Lane Panepinto and his father, Philip Panepinto, and Mr. Panepinto's insurer, State Farm Insurance Company.
The court below, noting that "plaintiff and his principal witness . . . were extremely careless with the truth," held that plaintiff did not bear his burden of proof and decided in favor of defendants. Plaintiff appeals dismissal of his suit. We affirm.
The sequence of events leading to plaintiff's injury are not so clear as plaintiff-appellant contends. Particularly, even plaintiff's "eye-witnesses" contradicted each other on a number of important aspects. The stories of what happened will be shown by juxtaposing them as the variations occurred.
On the day of the incident, at approximately 2:30 p.m., plaintiff parked his truck in front of the Rainbow Inn. He allegedly stopped to buy some soda water for his children who were in the truck. The children and plaintiff's wife remained in the truck while plaintiff went inside. As plaintiff was entering, he met with a friend, Gary Verdin, a 5' 11", 195 pound tugboat captain, a man whose physical capabilities plaintiff held in high esteem.
According to plaintiff, he and Verdin were at the bar when the two boys, Williams and Lane Panepinto, strangers to plaintiff and Verdin, entered. Plaintiff who stated that "you can hold just about all I drink in your hand" testified that he was just standing there and was not drinking. According to Verdin, he had ordered plaintiff and himself beers and they were drinking them when the boys came in. Plaintiff had not ordered any soda water. In fact, he never did.
The two boys went into an adjacent pool room but a few minutes later came back to the bar. Plaintiff testified that the two boys approached the bar and "they ordered us a beer and with a fellow with a gun you are not going to do much arguing." Yet, according to another part of plaintiff's testimony, no gun had been exposed at this point. In fact, he testified that a few moments later, after the beers were served, Williams pulled a gun on Verdin and demanded *814 that Verdin take the two boys to Grand Bois, a settlement some twenty to twenty-five miles away. Verdin, according to plaintiff, unafraid of the gun being brandished, walked over to Williams and grabbed the gun. Verdin and Williams scuffled. Panepinto then allegedly jumped onto Verdin's back.
According to Verdin, he never got the gun away from Williams. This assertion, however, was contradicted by his statement in deposition that he got the gun away.
Carroll Naquin, a young man who had been in the adjacent pool room when the incident began, testified that he was going into the bar when the fight between Verdin and Williams began. When confronted with a statement he gave the Terrebonne Parish Police Department, he admitted there had been an argument before the actual scuffling began. Plaintiff's testimony implied that there had been no prior argument. Naquin allegedly saw Verdin, Williams and Panepinto fighting.
Yet, even though Williams supposedly had a gun, plaintiff, Verdin's friend, testified that he did not get involved in the fight.
Peter Dupre, owner of the bar, came from around the bar and hit Verdin in the head with a billy. According to plaintiff, Verdin and Naquin, this broke up the fight.
At this point, according to plaintiff, he went to see about his family. He walked out of one of three front doors. One of the boys yelled that he was going to kill plaintiff and shot him as he stood in the door. Plaintiff at first did not want to identify which boy shot him but later said it was Williams. He also denied ever shaking his finger in Williams' face and demanding that the boys buy him a beer.
Verdin testified that after he was hit in the head, Williams and Panepinto exited from the bar through two different front doors. Plaintiff then proceeded to leave the bar through the same door that Williams had used. Verdin was supposedly right behind plaintiff. He saw Williams shoot plaintiff as Williams stood in front of the steps. He heard no conversation after plaintiff exited the inn.
Naquin testified that after Verdin was hit in the head, Williams went outside and plaintiff followed. He said he saw Williams shoot plaintiff.
Peter Dupre's version of the incident raises serious doubts as to the veracity of plaintiff's other witnesses. He testified that he saw no gun in his bar. He never saw Williams fighting with Verdin, only Panepinto. He estimated that everyone had been in the bar twenty-five to thirty-five minutes before the shooting. Plaintiff's other witnesses placed the time lapse of the entire episode at five to fifteen minutes.
Dupre testified that Verdin and Panepinto were on the floor on their knees "pressing each other down" when he hit Verdin with the billy. Plaintiff was already outside with Williams. As Dupre was breaking up the fight between Verdin and Panepinto, plaintiff was already coming up the steps. Plaintiff opened the door and said he was shot. Verdin could not have seen the shooting, as he was still fighting. Carroll Naquin was not in the bar.
Delores Pennington, plaintiff's wife, cast doubt on her husband's version that he did not chase after or grab Williams. She testified that her husband was in the Rainbow Inn seven to eight minutes before he came out and was shot by Williams. She stated that no words were spoken and that her husband did not grab Williams. She denied that she was related to Verdin.
On cross-examination Mrs. Pennington was confronted with a statement she had given the Lafourche Parish Sheriff's Office at Terrebonne General Hospital about an hour after the shooting in which she stated that a boy with black hair (Williams) came out onto the step and pulled a gun. (According to plaintiff, Verdin and *815 Naquin, the gun had been "pulled" in the bar.) Her husband came out and grabbed the boy's arm. Her husband then released the boy's arm and was shot. Mrs. Pennington also called Verdin her cousin in the statement.
After the shooting, Panepinto, unarmed, ran into the bar and got two motorcycle helmets. He and Williams began driving off on a motorcycle.
Verdin testified that Panepinto fired a shot back at the bar as the boys drove away. This was contradicted by his statement given to the Terrebonne Parish Sheriff's Office wherein he stated that it was Williams who shot at the bar. Verdin denied that anyone shot at the two boys as they drove away. This was contradicted by his statement in deposition in which he stated that "Tony's son-in-law" shot a shotgun at the boys and hit one.
Carroll Naquin also testified that Panepinto fired a shot with the pistol back at the bar. Under cross-examination he admitted talking to plaintiff's attorney as to who fired the second shot, and even though he was shown a statement given to the Terrebonne Parish Police Department wherein he said it was Williams who shot at the bar, he stuck to his assertion that it was Panepinto who fired the second shot. However, Naquin admitted that he heard a shotgun blast from the direction of the bar as the boys drove off. He also testified that he found lead holes in a helmet used by one of the boys.
The defense offered one witness, Lane Panepinto. He testified that he and Williams, a friend of about six months, entered the bar and went into the pool room. After a few minutes they went into the bar and plaintiff requested that they buy him a beer. An argument erupted between Williams and plaintiff. Williams stepped back and plaintiff started shaking his finger in Williams' face. Plaintiff then went toward Williams who pushed him off. At this point, according to Panepinto, someone took a swing at him. He and Verdin and another fellow scuffled. A shot was fired. Panepinto ran outside but had to go back into the bar to get some helmets. He testified that as he and Williams were driving away someone shot him. He did not shoot back at the bar. It was his motorbike and he knew that Williams had a gun. He further testified that Williams had bandages on both his hands. One hand had stiches.
Williams did not take the stand. The lower court stated that "his counsel did not put him on the stand since there is a criminal action for the shooting pending against him." The lower court also noted "that plaintiff made no attempt to examine Williams as he did not avail himself of the privilege of calling the defendant for cross-examination."
Plaintiff was a robust oil field worker weighing some 235 pounds with an IQ of approximately 73. Verdin, a man who apparently knew no fear, was 5 feet 11 inches tall and weighed 195 pounds. Peter Dupre had a billy. There were at least three other local people in the bar. Yet, in spite of this, plaintiff would have the court believe that two boys, who were outsiders, one with both hands bandaged, the other standing 5 feet 8 inches and weighing 130 pounds, provoked the fight. Plaintiff would also have the court believe that the shooting was unnecessary.
The lower court noted that "the truth of the `facts' depends upon the credibility of the witnesses. The number of witnesses testifying for a side does not determine credibility of a presentation." We agree.
The judge below viewed the witnesses as they testified. He evaluated their demeanor and seriously questioned the credibility of the plaintiff's witnesses. He was in a better position than this court to weigh credibility and his determination is thus entitled to great weight. Where there is substantial conflict in testimony, reasonable evaluation of credibility and reasonable inferences of fact made by trier *816 of fact should not be disturbed on appeal in absence of manifest error. Branch v. Watkins Realty Corp., 289 So.2d 381, (st Cir. 1973). No error has been shown.
Affirmed.
Appellant to pay all costs.