354 So.2d 682 (1978)
Akinori ECHIZENYA
v.
Joseph ARMENIO, Mrs. Joseph Armenio, XYZ Insurance Company and Jane and John Doe, d/b/a Mediterranean Restaurant.
No. 8478.
Court of Appeal of Louisiana, Fourth Circuit.
January 11, 1978.
Rehearing Denied February 14, 1978.
Writ Refused March 31, 1978.
*683 Many, LoCoco & Dwyer, Ralph D. Dwyer, Jr., New Orleans, for plaintiff-appellant.
Maurice D. Armagnac, Metairie, Frank Langridge, Gretna, for defendants-appellees.
Before SAMUEL, REDMANN and BOUTALL, JJ.
SAMUEL, Judge.
Plaintiff, Akinori Echizenya, filed this suit against Joseph Armenio and Mrs. Joseph Armenio[1] for personal injuries sustained by him in a shooting incident on February 15, 1975 in front of a restaurant owned and operated by Mr. Armenio and his partner, Rudolfo Toschi. Defendants' answer denies liability and pleads self defense on behalf of Joseph Armenio.
After a trial on the merits, judgment was rendered in favor of defendants, dismissing plaintiff's suit at his cost. Plaintiff has appealed from that judgment. We affirm.
The undisputed facts are: At the time of the incident in suit plaintiff, an instructor in karate, was 31 years of age; defendant Armenio (now and hereafter in the body of this opinion "Armenio" refers to Mr. Armenio) was 71 years of age. Plaintiff and a companion, both Japanese nationals, stopped in front of defendant's restaurant at approximately 11:30 p. m. on February 15, 1975 and either both or one of them commenced to urinate openly and publicly on the sidewalk or at the restaurant's front entrance door. Both plaintiff and his companion were intoxicated. Upon viewing this act, Armenio went out of his restaurant and demanded the urinating cease and the two remove themselves from his property. The content of the conversation among the parties at this point is contradictory, but it is clear plaintiff and his companion refused to cease their activities and refused to remove themselves from the premises. There is some evidence Armenio became enraged, and cursed and swore at the plaintiff and his companion. Armenio then reentered his restaurant and returned with a handgun. His partner, Toschi, accompanied him.
Only three eye witnesses testified to the facts of the occurrence, the plaintiff himself, Armenio and Toschi, the latter two being defense witnesses and their testimony is conflicting and often confusing.
Plaintiff's version of the incident was that his companion was urinating near the entrance of the restaurant when Armenio came out and told them to desist and move. He conceded they refused to leave when Armenio requested or told them to do so. An argument ensued during which Armenio cursed and abused the two men. Armenio then went back into the restaurant and, accompanied by Toschi, returned with the handgun. Armenio then told them to remove themselves from his property on penalty of being shot. Plaintiff responded, "Well, go ahead and shoot me", at which time Armenio shot him in the leg. Plaintiff denied any physical encounter but admitted he was attempting to hit Toschi when he was shot and that he had "pushed" Toschi.
The defense version, according to the testimony of Armenio and Toschi, is basically *684 the following: Through a glass window Armenio saw the two men urinating at the front door entrance to the restaurant. He went to the door, remonstrated with them and requested them to leave. They refused to do so, got into an argument and continued to urinate with one of them actually urinating on him, Armenio. He reentered the restaurant, told his wife to call the police, got his handgun and went back through the door with Toschi, who had been eating in the restaurant. When, with the handgun in evidence, Armenio again told the men to leave, they still refused to do so. Further argument ensued and Armenio and Toschi were attacked by the plaintiff and his companion. Toschi was struck in the chest and forehead. Armenio was struck first in the chest and then, by an only partially successful karate "chop", in the neck. Plaintiff then kicked at Armenio, the kick striking the hand in which he was holding the gun. The blow accidentally caused the gun to fire and the resulting shot struck plaintiff in the leg.
The primary evidence relied on by plaintiff to establish his case is the testimony of John Thevnot, then a uniformed deputy sheriff. Thevnot's testimony regarding statements made at the scene to him by Armenio and Toschi tend to support the position taken by plaintiff with regard to the manner in which the shooting occurred. Thevnot testified Armenio admitted he returned from the restaurant with a gun and shot plaintiff when he refused to move on. He also testified he obtained a statement from Toschi in which Toschi set forth facts consistent with plaintiff's version of the incident.
At the trial, Armenio denied having made any statements whatever to Deputy Thevnot, and Toschi totally repudiated the content of his statement, with the exception of his name, claiming he could not read English and was unable to verify the accuracy of the statement written by Deputy Thevnot as they sat in the restaurant after the shooting.
Plaintiff's basic argument is that the trial court committed error by not believing the testimony of Deputy Thevnot and the plaintiff as against the testimony of Armenio and his partner Toschi. However, by Deputy Thevnot's own admission he was not a totally disinterested witness. When asked whether he was attempting "to set up a prosecution case", he admitted he was in fact attempting to do so. In addition, the deputy testified his investigation lasted only a short time, and there is some doubt whether he could have interrogated Armenio and taken a written statement from Toschi in that time period. Moreover, Thevnot testified plaintiff admitted punching Toschi in the eye, but plaintiff himself contradicted that testimony. Especially in view of the contradictions and denials surrounding the testimony of Deputy Thevnot, we cannot say the trial court committed error by not accepting his testimony in its entirety.
Our settled law is that the findings of fact by a trial judge, particularly such findings as are dependent upon the credibility of witnesses, are entitled to great weight and will not be disturbed on appeal in the absence of manifest error.[2] This rule is especially pertinent where the testimony, as in the case before us, is highly contradictory and emotional.
Here, the rule is particularly applicable because of additional testimony establishing the fact that a physical encounter did take place. Deputy Thevnot testified that when he arrived on the scene he observed what he described as a large lump over Toschi's eye and a scratch on Armenio's neck. In addition, Dr. Russell T. Ribando saw both Armenio and Toschi on February 17, 1975. They gave him a history of having been involved in a fight at their place of business on February 15, 1975. The doctor testified *685 Armenio had bruises and contusions in the right cervical area with muscular soreness there and in the anterior chest wall. Toschi's injuries consisted of a hematoma of the forehead and muscular injury of the interior of the chest wall. He administered treatment to both, seeing Toschi on one other occasion and Armenio on two subsequent occasions.
In his written "FINDINGS OF FACT AND REASONS FOR JUDGMENT" the trial court specifically found as follows:
"The wound inflicted by the defendant was not intentional but was caused by the blow of the plaintiff's foot aimed at defendant and which struck defendant's hand holding the weapon, and plaintiff's demand will be dismissed."
We find no error in that trial court conclusion.
Plaintiff also urges the trial court committed error by refusing to admit evidence of Armenio's prior conviction of a shooting incident. In a proffer, his counsel offered the conviction for the purpose of proving Armenio's propensity to use weapons in a violent way. On Appeal, however, plaintiff cites authority for the introduction of prior convictions to impeach the credibility of a witness.[3]
From plaintiff's offer of proof, it appears defendant was convicted of manslaughter more than 43 years prior to the incident in suit, and was granted a pardon approximately 8 years later. There is no evidence Armenio has been involved in any criminal activity since that time, and the record supports the fact that he was 71 years old at the time of the incident. Under all of the circumstances, even if the lower court had allowed introduction of evidence of the prior manslaughter conviction, the court would not have committed error if it had afforded no weight whatever to the evidence in arriving at its conclusion of fact.
Finally, plaintiff argues a new trial should have been granted because of newly discovered evidence consisting of the testimony of Deputy Thevnot to establish he saw Toschi reading a newspaper on the day of the trial and the testimony of a witness who stated after the trial that he heard Armenio comment it was in his power to kill plaintiff but he instead chose to point the gun down and shoot him in the leg.
At the trial, Deputy Thevnot was questioned in detail regarding Toschi's ability to read, and testified unequivocally Toschi read over the statement at the time he signed it on the night of the shooting. If Deputy Thevnot had any evidence regarding Toschi's ability to read, he could have easily offered the evidence at the time he was questioned with regard to Toschi's reading of the statement. Moreover, the additional testimony of the other unknown witness sought to be admitted in a new trial contains little more in substance than the extensive testimony to the same effect offered by plaintiff at the trial. It is well settled the trial court has great discretion in granting a new trial, and there is no reason apparent in the record to indicate he committed error by so refusing.[4]
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
REDMANN, J., dissenting with written reasons.
REDMANN, Judge, dissenting.
Except that the investigating deputy sheriff did view his investigation as a criminal one, there is no basis in the record upon which to reject his firm, independent testimony:
[Defendant] told me he came back outside, he told the two men to leave and Mr. Echizenya said, "We don't have to get off your property." He said, "Well, if you don't get off my property I'm going to shoot you." So, he said, "Well, go ahead and shoot me." Then he told me he shot the man.
*686 The deputy's testimony repeats twice that defendant gave him this explanation of how the shooting occurred.
The deputy also took a statement from defendant's business partner and co-participant in the incident, Mr. Toschi. That statement directly contradicts that witness's trial time testimony. The statement reads, in part:
Both men said we not getting out of here and both men started walking toward me as I stepped back the tall man [plaintiff] punched me on the forehead. I stumbled backward and Joe who was on my left then shot the tall man who was in front of me.
The deputy also testified that plaintiff gave this description of the incident "at the hospital" to which he was taken shortly after it occurred:
Mr. Echizenya told me that he began arguing with Mr. Toschi and he [Echizenya] got mad and punched him on the eye. After he hit him that's when Mr. Armenio shot him in the leg.
There was, at the time when defendant was being investigated and arrested for shooting a man, no mention of defendant's being urinated on, or of the gun's firing accidentally as a result of defendant's hand being kicked.
If the trial judge rejected the deputy's testimony because he was making a criminal investigation, that was error as a matter of law. To hold otherwise is to reject all police testimony in all criminal cases.
Plaintiff and his companion deserve little sympathy. They behaved like drunken ruffians. The 71-year-old defendant, on the other hand, does deserve sympathy. But the law is that one, even a 71-year-old, may not use excessive or unnecessary force, not even against ruffians. After the first encounter with plaintiff and his friend outside the restaurant, defendant returned inside his restaurant to safety and there he should have stayed. He should have summoned the sheriff's deputies to rid him of plaintiff. His shooting of plaintiff (with a .44 magnum!) was unjustified.
Plaintiff should have judgment for his damages.
NOTES
[1] Also named defendants were XYZ Insurance Company and Jane and John Doe. These defendants were removed by a plaintiff nonsuit as to them. Defendant, Mr. Armenio, then dismissed his reconventional demand against the plaintiff.
[2] Billiot v. Bourg, La., 338 So.2d 1148; Canter v. Koehring Company, La., 283 So.2d 716; Boatner v. McCrory Corp., La.App., 341 So.2d 1174; Thornton v. Moran, La.App., 341 So.2d 1136; Pennington v. Panepinto, La.App., 328 So.2d 812; Constance v. Smith, La.App., 326 So.2d 905; LaCour v. Colonial Life & Accident Insurance Co., La.App., 324 So.2d 458; Wiley v. Travelers Insurance Company, La.App., 300 So.2d 555.
[3] See Middleton v. Consolidated Underwriters, La.App., 185 So.2d 307.
[4] See City of Baton Rouge v. Downtown Investment Corp., La.App., 290 So.2d 748.