SAMUEL, Judge.
These two expropriation proceedings, instituted for the purpose of acquiring property allegedly necessary for the construe- *62 lion of a proposed International Trade Mart complex, were consolidated for trial in the district court and for argument here. Neither the city’s authority to expropriate nor the necessity therefor are contested, The sole issue before us is quantum, the amount of compensation to be paid the respective defendants. We will refer to •the property involved in suit No. 1,400 of ■our docket as the Paltron property and that involved in suit No. 1,401 of our docket as the Montalto property.
Both suits were filed in April of 1963. 'The trial court judgments awarded $40,000 for the Paltron property and $26,000 for the Montalto property. The City of New Orleans has appealed seeking a decrease in these awards, respectively, from $40,000 to -$30,000 and from $26,000 to $22,000. The -defendants have answered the appeals seeking an increase from $40,000 to $76,488 and from $26,000 to $31,720.50.
The Paltron property consists of Lots ■4, 5, 6 and 7 in the First District of the ■City of New Orleans in Square No. 2, which square is bounded by Fulton, S. Front, Poydras and Gravier Streets. It is vacant land used as a parking lot and was rented for approximately $300 per month at the time suit was filed. It contains 9,-■651.21 square feet.
The Montalto property is in the same square. It is designated as Lot 1 on a plan ■drawn by Hugh Grant, surveyor, on January 12, 1852 and also designated as Parcel •8, Lot 1 on a survey made for the City of New Orleans by F. C. Gandolfo, Jr., surveyor, on March 13, 1962. This is improved property which includes the Gra-vier-Fulton and Gravier-S. Front Street •corners and contains 2,394.19 square feet. The improvement is a two-story brick 'building in poor condition and approximately 100 years old. It was rented by the defendant owner to his son for $240 per month. The son used the lower floor as -a restaurant and bar. He rented the upper floor, which contained 10 rooms designed -for living quarters and one bathroom, to a third party (who used that floor as a rooming house) for $40 per week.
The compensation to be awarded the owner of private property expropriated for public purposes is its market value when taken, the market value being the price which would be agreed upon, under ordinary and usual circumstances, in a voluntary sale between an informed owner willing to sell and an informed purchaser willing to buy. Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914; Housing Authority of New Orleans v. Persson, 203 La. 255, 13 So.2d 853; Housing Authority of Shreveport v. Green, 200 La. 463, 8 So.2d 295; State Through Dept. of Highways v. Olivier, 145 So.2d 97.
Plaintiff offered two expert witnesses, Omer F. Kuebel and Claude J. Pumilia, and defendants offered one such witness, J. Wallace Paletou, to prove market value. All are realtors in the New Orleans area and experienced in real estate appraisals.
Mr. Kuebel testified he first appraised the Montalto property in July of 1962, reviewed his appraisal in December of the same year and reviewed it again in May of 1963. He found that an adverse economic change had taken place in the area, which is near the foot of Canal Street and the river, chiefly as a result of the construction and use of the new Mississippi River bridge and the resulting lessening of foot traffic on that part of Canal Street. Most of the buildings in the vicinity are old, in poor condition and no longer suited for the use for which they were intended. He was of the opinion that property values had suffered a 10% to 15% decrease. Using four 1960 sales of other improved property in the vicinity as compárables, and giving consideration to the income potential of, and the rentals earned by, the expropriated property at the time of its taking, he concluded that the Montalto property had a value of $9.20 per square foot for combined land and building. His total appraisal was $22,000. Using two comparables, a 1956 sale of property with a building which had *63 to be torn down and a. 1959 sale of unimproved property, and taking into consideration potential income and rentals as he did in connection with the Montalto property, he concluded that the Paltron property had a value of $3.10 per square foot or a total appraised value of $30,000. Plaintiff’s other expert witness, Mr. Pumilia, arrived at the same conclusions.
Defendants’ expert witness, Mr. Paletou, basing his opinion on three recent sales (two in 1963 and one in 1961) with emphasis on one of the 1963 sales which reflected an increase of 48.33%, felt that property values in the area had increased approximately 25%. Using the same method and comparables as did plaintiff’s experts, but also considering the three more recent sales and adding the 25% increase, he valued the Montalto property at $11.10 per square foot, his total appraisal being $26,-575. In connection with the Paltron property he used the same method and one com7 parable, a 1961 sale of property on which there was a building that had to be demolished. He valued the Paltron property at $4.50 per square foot for a total appraisal of $43,450.
On cross examination Mr. Kuebel testified he knew of the 1963 sale which reflected an apparent 48.33% increase. For various reasons, principally that the property involved in that sale included a four-story instead of a two-story building and occupied a superior location closer to Canal Street, the 1963 sale did not change the conclusions he had expressed on direct examination.
Defendants’ counsel ask that we follow Mr. Kuebel’s valuations and add thereto the 48.33% increase reflected by the 1963 sale which is the only evidence indicating such an increase. We refuse to do this. To do so we would have to disregard the testimony of defendants’ own expert witness, Mr. Paletou, in whose opinion property values in the area had increased approximately 25%. In view of the fact that Mr. Paletou appraised the Montalto property at $26,575 and the Paltron property at $43,-450 and the trial court judgments respectively awarded the defendants $26,000 and $40,000, and considering the conflicting-testimony of the other experts, the defendants have little or no cause for complaint.
The trial court was more impressed by the testimony of the defendants’ expert than he was by plaintiff’s experts. Considering all of the expert testimony, and further discussion thereof is unnecessary, we are inclined to feel otherwise. But we-are unable to set the market value with-such exactitude as to enable us to hold that, the trial court judgments are incorrect.
The judgments appealed from are affirmed.
Affirmed.