TATE, J., recused.

249 So.2d 179

**STATE of Louisiana, Through the DEPART-MENT OF HIGHWAYS**

**v.**

**Charles A. PATOUT et al.**

**STATE of Louisiana, Through the DEPART-MENT OF HIGHWAYS**

**v.**

**Charles A. PATOUT et al., and Vermilion Development Company, Inc.**

**Nos. 50614, 50617.**

May 4, 1971.

Rehearing Denied June 28, 1971.

D. Ross Banister, Chester, E. Martin, Johnie E. Branch, Jr., Baton Rouge, for plaintiff-appellant.

Smith & Stansbury, Lafayette, and John M. Sherrill, III, Alexandria, Frank Smith, Jr., Lafayette, for defendants-appellees.

Barranger, Barranger & Jones, William J. Jones, Jr., Covington, Duplantier & McPherson, Adrian G. Duplantier, Farris, Ellis, Cutrone, Gilmore & Lautenschlaeger, Camille A. Cutrone, New Orleans, Benton & Moseley, Edward Donald Moseley, Baton Rouge, Theus, Grisham, Davis & Leigh, Robert Lee Curry, III, Monroe, for amicus curiae.

DIXON, Justice.

This is a companion case to State v. Vermilion Development Company, Inc., 258 La 1159, 249 So.2d 167, decided this date. The land expropriated in this suit was divided by the State into sixteen separate parcels. Originally Albert A. Richter was included as a party defendant; his claim was settled.

The trial court carefully analyzed the testimony of the appraisers employed by the State and the defendants. The evidence is conclusive that the property was part of a planned subdivision which had been under development for a period of six years before the expropriation. The development had been systematically performed, and all the evidence indicated that the remainder was suitable for subdivision development, and would in due course, as nearly as could be predicted, reach a state of complete development. Although some part of the land taken actually, at the time of taking, contained some growing crops, the trial court found that the transition into residential lots was "reasonably prospective, not speculative, so should be valued as subdivision property." The appraisal of one of the defendants' witnesses was accepted by the trial court.

The Court of Appeal, 236 So.2d 40, accepted the findings of the trial court that the appraisal of Angers represented fair market value, with this exception: the Court of Appeal found that Angers based his "evaluation of the lots on the basis that all lots could be sold on the day of the expropriation." Averting to the history of the development, and noting that the developers moved in an orderly fashion in extending streets and utilities, the Court of Appeal deduced that "a five to ten year delay would be expected for improving these undeveloped lots and placing them on the market." Consequently, Angers' appraisal for certain of the tracts was reduced in the Court of Appeal.

The State criticized Angers' method of appraisal. It is argued that property not lying on a completed street with the utilities at hand should be valued on an acreage basis as "potential subdivision development." Angers, on the other hand, used comparable sales to establish a front foot or square foot value of the lots which lay in various stages of development. He then computed the cost of converting the lots to fully developed subdivision property. These costs included necessary work to complete streets, drainage, sewage disposal and utilities. He then deducted the cost of such improvements from the value he had attributed to each lot.

Although there was a wide difference in the results reached by the two appraisers, we discern no basic difference in the appraisal methods. Each method was used in an attempt to determine market value. One method basically valued the land in the condition in which it was found at the time of the appraisal. The other valued the land as if it had been brought to readiness for its highest and best use and then subtracted the estimated cost of developing.

Angers himself recognized that there would be a substantial delay before the entire tract available to the developers was completed and sold. The existence of a market for the partially developed lots is a matter which an appraiser must consider in fixing market value. The imposition of a delay factor of from five to ten years by the Court of Appeal did not render Angers' evaluation more accurate.

There is no substantial error in the analysis of the appraisal evidence by the district court, and its judgment will be reinstated.

For these reasons, the judgment of the Court of Appeal is set aside, and it is ordered, adjudged and decreed that there be judgment herein in favor of the defendants, Charles A. Patout and Lawrence C. Richard, and against the plaintiff, the State of Louisiana, through the Department of Highways, in the amount of $137,178.00, subject to a credit of $58,800.-00 heretofore withdrawn by the defendants, with legal interest from the date of judicial demand until paid, and all costs.

## ON APPLICATION FOR REHEARING

PER CURIAM.

■ The meaning of "legal interest" is questioned. The interest rate as provided in both R.S. 48:455 and La.Civil Code Article 1938 was 5% when these debts accrued (C.C. art. 1938 was amended in 1970). We do not decide which of these provisions now prevails for it is not at issue. Legal interest on this judgment is 5%.

TATE, J., recused.