296 So.2d 357 (1974)
CITY OF NEW ORLEANS
v.
Doris BAKER, widow of Eticnne C. CLOUTET, et al.
No. 6222.
Court of Appeal of Louisiana, Fourth Circuit.
June 6, 1974.
*358 Blake G. Arata, City Atty., and R. H. Belknap, Asst. City Atty., for plaintiff-appellant.
Shushan, Meyer, Jackson, McPherson & Herzog, Donald A. Meyer, New Orleans, for defendants-appellees.
Before SAMUEL, STOULIG and MORIAL, JJ.
SAMUEL, Judge.
This expropriation proceeding was instituted by the City of New Orleans for the purpose of acquiring property necessary for the expansion of an existing park. The City initially offered the sum of $14,420, thereafter increased to $21,000, and defendants answered, claiming a valuation of $44,800. Following trial judgment was rendered expropriating the property and adjudging it to the City of New Orleans in full ownership upon the payment by the City of $27,500. Plaintiff has appealed. The City's authority to expropriate was not, and is not, contested. The sole issue is quantum.
The expropriated property is located on the west or right descending bank of the Mississippi River in that part of the city known as Algiers. It is designated as the north half of Square 79, consisting of a portion of ground measuring 300 feet front on St. Louis Street, 150 feet front on Lennox Boulevard, 300 feet on the line dividing the north half of Square 70 from the south half, and 150 feet front on Bautovich Street.
The property consists of approximately one acre of undeveloped land in close proximity to an existing park and golf course (Brechtel Park), the central city, and residential subdivisions. It will be used by the City to add nine holes to the present golf course and to enlarge the park's playground. The plan for the park extension was included in the city budget of 1967[1] and, although none of the streets surrounding the property were paved at the time of trial, Lennox Boulevard is expected to be completed by 1977 as a four lane thoroughfare.[2] It is conceded by all parties that the highest and best use is for residential purposes and it is already zoned single one family residential.
The compensation to be awarded to the owner of private property expropriated for public purposes is the market value when taken, that value being the price which would be agreed upon, under ordinary and usual circumstances, in a voluntary sale between an informed owner willing to sell and an informed purchaser willing to buy.[3]
In arriving at a valuation in this case the trial court considered the testimony of six witnesses, three called by plaintiff and three called by defendants. Plaintiff's witnesses were: Charles L. Fisher, chief engineer of the engineering districts of the City Streets Department; Robert Saucer, a deputy assessor in the Algiers office; and Peter F. Talluto, whom the trial court accepted as an expert real estate appraiser. Testimony on behalf on the defendants was given by William Cloutet, Sr. a civil engineer who is one of the owners of the property, Albert E. Fleury, administrator of real estate and property records of the City (called under the act), and Frank D. Delery, whom the trial court accepted as an expert real estate appraiser.
Mr. Talluto testified: In evaluating the subject property as of July 1, 1971 (suit *359 was filed June 23, 1972) he studied eleven sales of undeveloped land (seven of which predated 1967), analyzing each sale, giving the most weight to those he considered most reliable by comparison with the subject property which is undeveloped, unimproved, inaccessible, and contains no utilities. At the present time there are no public roads leading to the property, although streets are being constructed in the vicinity. The property is not suitable for a commercial area or a shopping center but it is strategically located close to the downtown area of the city and residential areas, and could be developed to its maximum potential as residential housing in conjunction with adjacent property. However, the development would be difficult or impractical unless all property owners in the area agreed to the same thing.
In formulating a final estimate he took into consideration whether the comparable was better or inferior to the subject property, and using each of the values of the comparables, ranging in price from $12,400 to $25,000 per acre, he concluded the fair market value of the subject property would be $14,000 per acre.
Mr. Delery testified: He used nine comparables, eight of which were considered under the "drop lot" approach, and one under the "raw acreage" approach. In the drop lot method he examined sales of lots in nearby completed subdivisions which included off-site improvements (i. e., sewerage, water, utilities, streets) and deducted from the sales price the cost of improvements, thus arriving at a fair price for the property in its unimproved state, comparable to the subject property. He allowed additional compensation for corner lots, because they always command a premium price. He would subdivide the subject property into five lots 60' × 150', for a total of 9,000 square feet per lot. Based upon the drop lot approach each lot would be worth $17,000, and the corner lots would command an additional $1,200-$1,500. Thus, the total valuation would be $67,000. Allowing for off-site improvements, he would deduct $22,000. Under that approach he concluded the present market value would be approximately $44,000.
Based upon his raw acreage comparable, he determined the value as $38,000. However, he regarded the $44,000 valuation more reliable in the instant case because a small tract commands a premium price over a large acreage, it being easier to market a one acre tract than a much larger tract.
Appellant contends: (1) Evaluating the property as residential lots as opposed to unimproved acreage is too speculative; (2) Mr. Delery should not have been qualified as an expert; (3) the valuation should have been determined only as of the date of expropriation and proposals for improving the property sought to be expropriated should not have been considered; and (4) the valuation placed upon the property is excessive.
We find no merit in appellant's first contention. In determining whether or not the use contemplated is so remote as to be speculative it is proper to consider the proximity of the land to areas already developed in a manner compatible with the use intended;[4] some action already taken to develop the land for the use intended;[5] scarcity of land available for the particular use;[6] use intended by the zoning ordinance;[7] and evidence that there is a market for such use in the vicinity.
*360 Since both of the experts agree the property's highest and best use is for residential purposes, and plaintiff concedes it is in a strategic location close to the downtown area, to an existing park and golf course, and to residential subdivisions, and in view of the fact that the land already is zoned residential, the contemplated sales of residential lots is not too speculative. This is particularly true because Lennox Boulevard already has been accepted as a major four lane boulevard and is expected to be completed by the City by 1977.
Nor do we agree with appellant's second contention, that Mr. Delery's practical experience and methods, which plaintiff alleges do not conform to the normal methods of arriving at real estate appraisals, are insufficient to qualify him as an expert in real estate appraisals. Mr. Delery has been engaged in the real estate business for the past eight years. He has a college degree in business administration and has taken courses and seminars in real estate, including appraisals. For the past five years he has owned his own real estate business and has appraised over 100 properties for well known local clients as well as out of state corporations.
The trial court is vested with much discretion in determining whether a witness is qualified to testify as an expert,[8] and we find no abuse of that discretion here.
Appellant's third contention is based upon the fact that some of defendants' comparables were sales which were effected a few months after the expropriation took place, and that their evaluation is inflated by the knowledge that the City plans to build a golf course and extend a playground after the expropriation.
First of all, a nine hole golf course and a playground are already in existence, as are subdivisions in the surrounding area. Furthermore, the plans for extension have been known publicly since 1967, at which time they appeared in the City's capital budget. We also note that seven of appellant's comparables predate 1967, some five years before the city expropriated the subject property. We do not believe the trial court relied on post-expropriation sales, since these sales were not particularly higher than sales just prior to the expropriation.
Nor do we believe the valuation placed upon the property is excessive. The award of $27,500 is less than the valuation placed upon it by the defendants' expert of $38,000 (raw acreage method) or $44,000 (drop lot approach), and higher than the City's final offer and admitted fair value of $21,000. We find no error in the trial court's factual determination as to the value of the property expropriated, a determination reached after hearing all of the witnesses.[9]
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
NOTES
[1] MCS Ord. No. 3461.
[2] MCS Ord. No. 4905.
[3] Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914; Lafayette Airport Commission v. Roy, La.App., 265 So.2d 459; State, Department of Highways v. Cartlidge, La.App., 258 So.2d 175; State, Department of Highways v. Wolfe, La.App., 252 So.2d 483; City of New Orleans v. Paltron, La.App., 166 So.2d 61.
[4] Caddo Parish School Board v. Willer, 227 La. 201, 78 So.2d 833; State, Department of Highways v. Burden, La.App., 180 So.2d 784; Central Louisiana El. Co. v. Harang, La.App., 131 So.2d 398.
[5] City of Shreveport v. Abe Meyer Corp., 219 La. 128, 52 So.2d 445; State, Department of Highways v. Talbot, La.App., 200 So.2d 97.
[6] Louisiana Highway Comm'n v. DeBouchel, 174 La. 968, 142 So. 142; State v. Olivier, La.App., 145 So.2d 97.
[7] State, Department of Highways v. Vallon, La.App., 182 So.2d 705; City of Monroe v. Nastasi, La.App., 175 So.2d 681; City of Monroe v. Hobbs, La.App., 168 So.2d 852.
[8] City of Baton Rouge v. Downtown Investment Corp., La.App., 290 So.2d 748; State, Department of Highways v. Huson, La.App., 166 So.2d 3; State v. Ebrecht, La.App., 135 So.2d 630; State v. Rooks, La.App., 131 So. 2d 125; 8 La.Dig. 543(2).
[9] See Louisiana Power & Light Co. v. Guapp, 255 La. 563, 232 So.2d 273; State, Department of Highways v. Osbon, La.App., 292 So.2d 898; City of Baton Rouge v. Downtown Investment Corp., footnote 8; State, Department of Highways v. Mayer, La.App., 257 So.2d 723.