447 So.2d 1104 (1984)
POINTE COUPEE ELECTRIC MEMBERSHIP CORPORATION
v.
Emma Eloise Glynn MOUNGER.
POINTE COUPEE ELECTRIC MEMBERSHIP CORPORATION
v.
Thomas C. MOUNGER and Faye Glynn Mounger Lacour.
Nos. 83 CA 0300, 83 CA 0301.
Court of Appeal of Louisiana, First Circuit.
February 28, 1984.
*1107 Athena B. Piedrahita, Baton Rouge, for plaintiff-appellant.
David M. Ellison, Jr., Baton Rouge, for defendant-appellee.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
ALFORD, Judge.
Plaintiff-appellant, Pointe Coupee Electric Membership Corporation, filed two expropriation suits seeking 80 foot wide servitudes for the erection of an electric transmission line over the lands owned by defendants-appellees. In the first suit, appellant sought to expropriate approximately 14.62 acres from the land owned by Emma Eloise Glynn Mounger. In the second suit, appellant sought to expropriate approximately 5.62 acres from the land owned in indivision by Thomas C. Mounger and Faye Glynn Mounger Lacour. The two cases were consolidated for trial and appellant has appealed from the judgments rendered in both cases. Appellees have answered the respective appeals seeking an increase in the severance damage awards.
Appellees did not contest the taking of the property, and thus, the only matters under consideration at trial were the value of the land taken and damages. The trial court found the highest and best use of each of the two tracts taken was for rural residential or industrial development in their entirety. The fair market value of the land taken was determined to be $4,500.00 per acre with a servitude value of 90% of the fair market value. This resulted in awards of $59,211.00 for the land taken from the Emma Mounger tract and $22,761.00 for the land taken from the Thomas Mounger and Faye Lacour tract.
After the trial court's written reasons for judgment were read in open court, argument was heard on the issue of severance damages. The trial court found that appellees sustained severance damages to a 175 foot strip west of and parallel to the servitudes to the extent of 10% of the servitude value. This resulted in awards of $13,081.00 to Emma Mounger and $4,987.45 to Thomas Mounger and Faye Lacour.
The trial court's written reasons for judgment were read in open court on October 27, 1982. Judgments were signed on November 10, 1982, reflecting the awards for the value of the servitudes and severance damages. On November 16, 1982, appellees filed motions to withdraw the funds deposited in the registry of the court, to fix attorney's fees, to fix expert witness fees and for new trials. On November 22, 1982, appellant filed exceptions to appellees' motions to withdraw, to fix attorney's fees and to fix expert's fees. Additionally, appellant filed a motion to dismiss appellees' motions and to vacate the order granting the appraisal fees. All of these matters came to be heard on December 15, 1982, with the result that the appellees' motion for new trials were denied, attorney's fees in the amount of $6,098.24 were awarded and appraisal fees were increased to $2,100.00.
Although appellant alleges some seventeen assignments of error, there are in reality only three issues presented in this appeal. These issues are whether the trial court erred in its findings as to: 1) highest and best use, 2) severance damages and 3) attorney's and expert's fees.
Appellant called two expert witnesses in the field of real estate appraisal to testify on its behalf. The first, Oren W. Russell, was of the opinion that both tracts were of such a nature as to each have two highest and best uses. First, he felt that those portions of each tract fronting on La. 416 *1108 could be utilized as rural residential homesites with the remaining land in each tract suitable for agricultural uses. In relation to the property being taken, it was Mr. Russell's opinion that the Emma Mounger tract contained 1.47 acres suitable for rural residential development and 13.08 acres suitable for agricultural uses. Regarding the Thomas Mounger and Faye Lacour tract, it was Mr. Russell's opinion that 1.47 acres was suitable for rural residential development with 4.15 acres best suited for agricultural uses.
Using the comparable sales approach, Mr. Russell determined that the lands suitable for rural residential development had a fair market value of $5,100.00 per acre with the remaining agricultural lands worth $1,390.00 per acre. Mr. Russell valued the servitude at 80% of the market value of the property and found no severance damage to defendants' remaining property.
Appellant's next expert, Mr. George Platt, also reached the conclusion that the two tracts involved in this litigation each had the two highest and best uses testified to by Mr. Russell. Mr. Platt's testimony did slightly differ in the amounts of each tract attributable to the two uses. It was his opinion that of the property taken from the Emma Mounger tract, 1.837 acres were suitable for rural residential development with the remaining 12.783 acres usable for agriculture. As to the property taken from the Thomas Mounger and Faye Lacour tract, Mr. Platt felt 1.837 acres were suitable for rural residential development with the remaining 3.783 acres suitable for agricultural uses.
Mr. Platt's testimony differed significantly from the testimony of Mr. Russell and appellees' expert regarding the fair market value of the two pieces of property. Based upon comparable sales, Mr. Platt determined that those portions of the tracts suitable for rural residential development had a fair market value of $3,300.00 per acre, with the agricultural lands valued at $1,500.00 per acre. Mr. Platt also valued the servitude at 80% of the market value of the land and found no severance damages.
Appellees called Mr. John Lejeune as their expert in the field of real estate appraisal. In contrast to the other experts, Mr. Lejeune testified that in his opinion, the highest and best use for each of the two tracts was rural residential development in their entirety. Using the comparable sales approach, Mr. Lejeune determined that the fair market value of the land was $5,000.00 per acre and he valued the servitude at 95% of the fair market value of the land. Also in marked contrast to appellant's experts, Mr. Lejeune determined that appellees would suffer substantial severance damages to the remainder of their property. It was his opinion that an area 175 feet west of and parallel to the proposed transmission line servitudes would be adversely affected. Mr. Lejeune proposed that in relation to the properties, the first 87.5 feet parallel to the servitudes would be damaged by 60% and the next 87.5 foot strip would be damaged in the amount of 40%.
Both of the tracts involved in this litigation are located in Sections 50 and 51, Township 5 South, Range 11 East, in Pointe Coupee Parish near the town of Glynn. In addition, both tracts share the following characteristics: 1) they are separated from each other by La. Hwy. 416; 2) they both have substantial frontage on La. Hwy. 416, with the Emma Mounger tract having additional frontage on La. Hwy. 982; 3) both tracts are burdened with a 245 foot wide Gulf States Utilities servitude upon which a transmission line has been erected; 4) both tracts are burdened with a 100 foot wide Texas and Pacific Railroad right-of-way; and 5) at the time of trial the majority of the land comprising both tracts was being used for sugarcane production, however, two acres were being leased as an industrial site. The land owned by Emma Mounger totals in excess of 200 acres and the Thomas Mounger and Faye Lacour contains approximately 116 acres.

*1109 HIGHEST AND BEST USE
The basis issue in this appeal concerns the trial court's determination that the highest and best use of both tracts taken was for rural residential or industrial development in their entirety. As noted in Town of Rayville v. Thomason, 404 So.2d 1290, 1293 (La.App. 2nd Cir.1981):
Market value means the worth of the land considered in light of its best and highest use, this being the most favorable employment to which the property is adaptable and may reasonably be put in the not too distant future. State, Department of Highways v. Rapier, 246 La. 150, 164 So.2d 280 (1964). If unimproved property is to be valued on the basis of residential development, there must be some reasonable expectation that the property will be used for that purpose in the not too distant future. State, Department of Highways v. Talbot, 200 So.2d 97 (La.App. 1st Cir.1967), writ refused 251 La. 49, 202 So.2d 658 (1967). Some factors to be considered in determining highest and best use are: proximity to areas already developed in a manner compatible with the intended use; action already taken to develop land for that use; scarcity of land available for that use; use permitted by zoning ordinances; use to which the property is being put at the time of taking; existence of offers to buy property by those wanting to develop residential property or by those wanting to buy residences; and residential market in the vicinity. City of New Orleans v. Cloutet, 296 So.2d 357 (La.App. 4th Cir.1974).
Appellant maintains that the trial court's finding as to highest and best use was in error because appellees have no intention to so utilize the properties in the not too distant future. It is interesting to note, however, that appellant at the same time maintains that a portion of each of the tracts should be found to have a residential highest and best use. Additionally, appellant's argument fails to take into consideration that the property owner is entitled to the market value of the land expropriated based upon the prospective highest and best use, where that use is removed from the realm of speculation or guesswork, even though he may have no plan to sell the property or so utilize it at the time of the expropriation. Cypress-Black Bayou Rec. & W. Con. Dist. v. Conger, 234 So.2d 212, 213 (La.App. 2nd Cir.1970); State, Department of Highways v. Jenkins, 207 So.2d 380, 388 (La.App. 3rd Cir.1968).
On review, therefore, we are called upon to determine if the prospective residential or industrial use of the property is too speculative to serve as the highest and best use of the tracts. Applying the factors denoted in City of New Orleans v. Cloutet, supra, we are of the opinion that the trial court committed no manifest error.
First, there is evidence in the record of other residential and industrial developments in the area. Second, appellees introduced a subdivision plat they developed in 1975 and 1976, and filed in 1977 showing how they intended to develop the tracts. Third, there can be no question that available land is scarce in the vicinity. Fourth, there was no evidence introduced at trial to show any adverse zoning restrictions which would preclude such an intended use. Fifth, although the majority of the land is being utilized for agriculture, there is already one industrial site on the property. Sixth, the fact that there is no present demand on the property does not change our opinion in that the property has not been placed for sale on the market. Finally, we are convinced from the testimony that the residential market in the vicinity is sufficient to make the project economically feasible in the forseeable future.
Appellant further maintains that the trial court erred in its failure to consider appellant's comparable sales as indicia of market value, erred in its failure to give weight to values of other servitudes and erred in considering sales from fully subdivided lots as indicia of highest and best use and market value. We disagree. The trial judge in an expropriation case is granted much discretion in weighing the *1110 testimony of experts, and his finding of value based upon such evidence will not be disturbed unless clearly erroneous. State, Department of Highways v. Kornman, 336 So.2d 220 (La.App. 1st Cir.1976).
We are of the opinion that the findings of the trial court as to highest and best use and market value are substantiated by the evidence. Additionally, we note that in the realm of local property conditions, a trial judge's superior knowledge should and must be given great deference by an appellate court. State v. Ransome, 392 So.2d 490 (La.App. 1st Cir.1980). Appellees have met their burden in proving highest and best use and market value.
Appellant additionally maintains that the trial court's finding of servitude value at 90% of market value is excessive. Mr. Russell and Mr. Platt, appellant's experts, assigned 80% of market value as the servitude value while Mr. Lejeune, appellees' expert, assigned 95% of market value as the proper amount. Given our finding that the trial court was correct in determining highest and best use as residential or industrial, we are of the opinion that 90% of market value is not so high as to amount to an abuse of the trial court's discretion.

SEVERANCE DAMAGES
Appellant maintains that the trial court erred in awarding severance damages. Both of appellant's experts, Mr. Russell and Mr. Platt, testified that since the lands had highest and best uses for agriculture, and since this was a second severance they were of the opinion that no severance damages would result to appellees' remaining lands. "In expropriation proceedings, the trial court's factual findings as to severance damages and the evaluation of, and the weight given to, the testimony of expert witnesses will not be disturbed on review absent a showing of manifest error." State Through Dept. of Highways v. Ruckstuhl, 348 So.2d 701, 704 (La.App. 1st Cir.1977). We find no such manifest error in the trial court's determination.
First, we have already determined that the trial court did not err in deciding that the properties had highest and best uses for residential or industrial development. Second, the mere fact that this is a second severance does not preclude the finding of severance damages. Michigan Wisconsin Pipe Line Co. v. Bonin, 217 So.2d 741 (La.App. 3rd Cir.1969), writ denied 253 La. 735, 219 So.2d 513 (La.1969). It is apparent that the trial court agreed with Mr. Lejeune's opinion that the addition of this transmission line created a utility corridor which would decrease the value of the land surrounding the servitude. We find nothing clearly erroneous in this determination. Finally, Mr. Lejeune's report clearly sets forth his opinion as to the value of the property both before and after the taking.
In answering these appeals, appellees maintain that the trial court should have awarded severance damages in accordance with Mr. Lejeune's testimony. Alternatively, appellees' argue that the trial judge erred in only awarding 10% of the servitude value of the land rather than 10% of the fair market value of the land. It is apparent to this court that the trial court took into consideration that this was a second severance in awarding a percentage of the servitude value as severance damages. We find nothing erroneous in this method of determining severance damage. Michigan Wisconsin Pipe Line Co. v. Bonin, supra.

ATTORNEY'S FEES AND EXPERT'S FEES
Appellant's basic argument with respect to the awards for attorney's fees and expert's fees is that they were not proper under the procedural posture of this case. Alternatively, appellant maintains that the awards were excessive.
Appellant first maintains that appellees are not entitled to costs, attorney's fees or expert's fees due to their failure to file responsive pleadings. It is apparent from the record that there was confusion regarding appellees' answers to the expropriation *1111 petitions. Appellees' counsel stated that the answers were filed on the morning of trial but somehow got back into his file. He further stated that appellant's counsel was handed a copy of the answers that morning which was denied by appellant's counsel. This problem came to light on the hearing of the exceptions and motions. The trial court allowed appellees' attorney to file the answers in open court.
We note that the records in both of these cases reveal that answers, although unsigned by counsel, were filed on the morning of the trial. The notation on the top of each of these answers indicate that they were received by I.G. Olinde, Clerk of Court for Pointe Coupee Parish, on October 13, 1982. While the failure of appellees' counsel to sign the pleadings is admittedly a technical violation, it does not in our opinion equate to a failure to file. The purpose for requiring pleadings to be signed by counsel of record is to place responsibility for the truthfulness of the assertions contained therein on the attorney so as to subject him to disciplinary action for willful violation. Kanuk v. Pohlmann, 338 So.2d 757 (La.App. 4th Cir. 1976), writ denied, 341 So.2d 420 (La.1977).
Additionally, failure to file an answer to an expropriation suit within 15 days of service of the notice of the time fixed for trial merely constitutes a waiver by defendant of all defenses to the expropriation suit except claims for money as compensation for the property sought to be expropriated and claims for money as damages to other property. LSA R.S. 19:6, LSA R.S. 19:7. Article 1 Section 4 of the Louisiana Constitution of 1974 provides that in every expropriation the owner shall be compensated to the full extent of his loss. In Consolidated Sewerage Dist., Etc. v. Schulin, 387 So.2d 1369, 1373 (La. App. 4th Cir.1980), it was determined, "... that the legislative intent relative to the phrase `to the full extent of his loss' was meant to include an award of attorney's fees to the landowner in expropriation cases under Article 1, § 4 of the Constitution of 1974." We further note that it has been held that in any case where the highest amount offered is less than the amount obtained by the landowner in the judicial assertion of his rights, the landowner is entitled to reasonable attorney's fees pursuant to LSA R.S. 19:8. Claiborne Elec. Cooperative, Inc. v. Garrett, 357 So.2d 1251, 1258 (La.App. 2nd Cir.1978), writ refused, 359 So.2d 1306 (La.1978).
There can be no doubt that legal costs of an expropriation proceeding come within the constitutional guarantee of just and adequate compensation to the landowner. S. Cent. Bell Tel. Co. v. Marsh Inv. Corp., 344 So.2d 6 (La.App. 4th Cir.1977). Also, expert witness fees are taxable as costs rather than as damages. State v. Circle Center Corporation, 148 So.2d 411 (La.App. 1st Cir.1962), writ refused, 243 La. 1011, 149 So.2d 765 (1963).
Appellant next maintains that the trial court erred in awarding attorney's fees and expert's fees after the judgments had been signed. It is appellant's position that once the judgments were signed appellees' only available procedure for obtaining such fees was by appeal. This argument is without merit as to expert's fees. The judgments rendered in these cases cast appellant with costs. As noted above, expert's fees are taxed as costs. State v. Circle Center Corporation, supra. There is both statutory and jurisprudential authority for fixing costs by a rule to show cause after judgment. LSA R.S. 13:3666 B(2), Bentley v. Industrial Fire Protection, Inc., 350 So.2d 982 (La.App. 2nd Cir. 1977).
In regard to the awards of attorney's fees, R.S. 19:8 provides in part: "Immediately after compensation has been determined, the plaintiff shall, upon motion of the defendant, present evidence as to the highest amount it offered the defendant for the property prior to trial on the merits. After hearing evidence on the issue, the court shall determine the highest amount offered. If the highest amount offered is less than the compensation award, the court may award attorney's fees." As noted *1112 in the trial court's written reasons for judgment, evidence as to the highest amount offered appellees before trial was presented at trial. Appellees were therefore under these facts not required to make the motion referred to in LSA R.S. 19:8. Additionally, appellees were awarded $24,392.95 more than appellant had offered them prior to trial. The fact that attorney's fees were not awarded until after judgment was signed does not, in our opinion, require reversal. Trial courts are not divested of jurisdiction over the merits of the case until the order of appeal is granted. LSA C.C.P. art. 2088. The orders of appeal in these cases were not signed until January 3, 1983, and therefore, the trial court still had jurisdiction over these cases. Given the above facts, it was solely within the trial court's discretion as to whether attorney's fees would be granted. LSA R.S. 19:8.
Finally, appellant maintains that the trial court erred in granting excessive awards for attorney's fees and expert's fees. Appellees were awarded 25% of the difference between the amount offered by appellant and the amount they were adjudged to be entitled to as reasonable attorney's fees. We see no abuse in this award. City of Shreveport v. Bernstein, 391 So.2d 1331 (La.App. 2nd Cir. 1981) City of Shreveport v. Pupillo, 390 So.2d 941 (La.App. 2nd Cir.1980), writ denied, 396 So.2d 921 (La.1981). Additionally we are of the opinion that Mr. Lejeune's testimony as to the amount of time spent on these two cases justifies the $2,100.00 award for expert's fees awarded appellees. In State Department of Highways v. Kornman, supra at 225, this court noted that while an agreement between an expert and his client as to the amount of expert's service is not the sole criterion to set court costs for his services, in order to change the amount awarded, the court must find the trial court abused its much discretion. We find no such abuse.
In conclusion, we are not called upon, as maintained by appellant, to decide if new trials are allowed in expropriation proceedings. Appellees' motions for new trials were based on the issue of the amounts of the severance damage awards. Separate motions for attorney's fees, cost and expert's fees were filed and the mere fact that all of these matters were heard at the same time, does not change their separate character. Additionally, appellee's motions for new trials were denied by the trial judge.
Therefore, for the foregoing reasons, the judgments in Appeal No. 83 CA 0300 (District Court Suit No. 18,293) and in Appeal No. 83 CA 0301 (District Court No. 18,294) are affirmed and appellant is cast with costs in both appeals.
AFFIRMED.