482 So.2d 765 (1986)
HOSPITAL SERVICE DISTRICT NO. 1 OF JEFFERSON PARISH
v.
Eddie J. GUILLOT.
Consolidated with:
HOSPITAL SERVICE DISTRICT NO. 1 OF JEFFERSON PARISH
v.
Eula Mae Capps, Wife of, and Curtis L. McKEAN.
Nos. 85-CA-443, 85-CA-444.
Court of Appeal of Louisiana, Fifth Circuit.
January 13, 1986.
*766 George M. Papale, Stumpf, Dugas, LeBlanc, Papale & Ripp, Gretna, for plaintiff-appellee.
Robert F. Fadaol, Gretna, for defendant-appellant.
Earl J. Schmitt, Jr., In pro. per.
Before BOWES, CURRAULT, GRISBAUM, JJ.
CURRAULT, Judge.
This appeal originates in the Twenty-Fourth Judicial District Court, Division "M", wherein the Honorable Robert J. Burns rendered judgment in favor of plaintiff, Hospital Service District No. 1 of Jefferson Parish, and against defendants, Mr. and Mrs. Curtis McKean, Eddie J. Guillot and Earl J. Schmitt, Jr., allowing the expropriation of the McKean and Guillot properties. We affirm.
*767 Hospital Service District No. 1 of Jefferson Parish, d/b/a West Jefferson General Hospital (hereinafter referred to as the Hospital) attempted to acquire the property bearing the Municipal No. 1200 Avenue B, Marrero, Louisiana (hereinafter referred to as the McKean property), and the property bearing the Municipal No. 1124 Avenue B, Marrero, Louisiana (hereinafter referred to as the Guillot property). Subsequent to the appraisal of both properties, and as an ongoing attempt to acquire the properties without the necessity of expropriation, the Hospital sent final and best offer letters, dated August 16, 1983, to both the McKeans and Guillots. In these certified letters, David M. Smith, Director of the Hospital, stated:
"If you are unwilling to sell at the sum offered and we have not reached agreement at this price on or before the fifteenth day of September, 1983, the Hospital Service District, in conjunction with the Property Acquisition Department of the Parish Attorney's Office, will exercise its expropriation powers against your property."
The landowners refused the Hospital's offers and then granted Earl Schmitt, Jr. options to purchase their properties. The McKean option was executed on August 17, 1983, and the Guillot option was executed on August 28, 1983. The stated consideration for each of the options was One Hundred Dollars ($100). Each option purported to remain in effect for four additional one-year periods upon the written notice of the optionee to the landowners more than thirty days prior to the annual anniversary dates.
On November 30, 1983, the Jefferson Parish Council unanimously adopted Resolution No. 49482 which authorized the Hospital to expropriate the McKeans' and Guillots' properties. This resolution was based on a recommendation by the Hospital's board of directors which stated that such expropriation was necessary for providing an expansion of the medical services and facilities of the Hospital. The resolution further authorized the Parish Attorney's office to provide advice and assistance to the Hospital during the proceedings.
The Hospital filed petitions for the expropriation of property on January 4, 1984 against the McKeans and the Guillots. Supplemental and amending petitions were filed by the Hospital in both cases on March 12, 1984, adding the option holder, Earl J. Schmitt, Jr., as a defendant. The cases were consolidated for trial on July 12, 1984.
The trial proceeded only on the issue of fair compensation for the property sought to be expropriated and damages to other property. Judgment was rendered on November 16, 1984, adjudicating the properties to the Hospital and awarding Three Hundred Twenty-Five Thousand Dollars ($325,000) to the McKeans and Forty Thousand Dollars ($40,000) to the Guillots. The trial court did not, at that time, render a decision as to any compensation which may have been due to the option holder, Schmitt. Although present at trial and represented by counsel, Schmitt did not offer any evidence at the time of trial.
The Hospital filed a post-trial motion for summary judgment against Schmitt on December 12, 1984. The motion was heard on April 3, 1985, and granted on April 8, 1985, dismissing the claims of Schmitt. All defendants have appealed.
Appellants, the McKeans and Guillots, appealed asserting:
"The trial court erred:
(1) in failing to litigate the issue of public need for the property, as to the Guillots;
(2) in failing to properly determine compensation based on prospective highest and best use; and
(3) in failing to discount the testimony of Mr. Stumpf, in light of the Hospital's failure to bring as a witness one of its appraisers."
Appellant Schmitt appealed asserting:
"The trial court erred:
(1) In failing to litigate the issue of public need for the property, as to the Guillots and Schmitt; and
*768 (2) In granting the summary judgment against Schmitt, since there were material issues of fact and law present."
In their reconventional demand, appellants-McKeans alleged that there was no need for the expropriation of their property. In response, the Hospital filed a motion to strike asserting that the McKeans' answer was untimely and therefore constituted a waiver of all defenses to the expropriation suit, except claims for money for compensation of the property sought to be expropriated and for money as damages to other properties. The Honorable Frank V. Zaccaria, Division "B", heard arguments on the motion on June 22, 1984, prior to consolidation, and subsequently rendered judgment in favor of the Hospital ruling that the McKeans were "relegated to a claim for quantum only." This judgment was neither appealed nor were writs taken.
After consolidation, the Hospital filed a motion to strike the defenses asserted by the Guillots and Schmitt, both of whom challenged the need for the taking in their answers. Initially, Judge Burns, uninformed by counsel of Judge Zaccaria's prior ruling, denied the motion. However, upon learning of Judge Zaccaria's earlier action, Judge Burns reconsidered the motion and maintained it limiting the consolidated expropriation suits to the issue of quantum only.
LSA-R.S. 19:6 mandates that a defendant in an expropriation suit, "shall file an answer within fifteen days after the service upon the defendant of the notice of the time fixed for the trial." Failure "to file an answer to an expropriation suit within fifteen days of service of the notice of the time fixed for trial constitutes a waiver by the defendant of all defenses to the expropriation suit except claims for money as compensation for the property sought to be expropriated and claims for money as damages to other property." LSA-R.S. 19:5; LSA-R.S. 19:6; Pointe Coupee Elec. Mem. Corp. v. Mounger, 447 So.2d 1104 (La.App. 1st Cir.1984).
The Hospital's expropriation petition naming Eddie J. Guillot defendant was filed January 4, 1984, and was served through domiciliary service upon Mrs. Guillot at the Guillot home on January 11, 1984. The notice of service, which also fixed the time of the trial, clearly stated:
"You must file an answer within the 15-day period after service of citation and your failure to file an answer within the 15-day period constitutes a waiver by you of all defenses to the suit, except claims for money as compensation for the property sought to be expropriated and claims for money as damages to other property."
The record indicates the Guillots' answer was not filed until January 31, 1984twenty days after service of the notice of the time fixed for trial.
Earl J. Schmitt, Jr. was made a defendant in each of the expropriation suits, prior to their consolidation, by the Hospital through supplemental and amending petitions. Schmitt was served with the supplemental and amending petition in the McKean case on March 13, 1984, but did not file his answer until April 23, 1984. Schmitt was served with the supplemental and amending petition in the Guillot case on April 2, 1984, but again did not file his answer until April 23, 1984. Both answers were filed well beyond the fifteen-day period. Although the clerk of court did not attach a copy of the standard "Notice of Expropriation" (warning that an answer must be filed in fifteen days or defenses will be waived), specifically directed to Schmitt, Schmitt was served with copies of the notice directed to the Guillots, as well as the citations and supplemental and amending petitions directed to him. Both the Guillots' notice as well as the original petition contained notices that the answer to an expropriation case must be filed within fifteen days.
The trial court committed no error in refusing to litigate the issue of public need for the expropriation of the Guillot property as to the Guillots or the option holder Schmitt.
*769 The proper measure of compensation due a landowner is the market value of the property at the time expropriated based upon its prospective highest and best use, where that use is removed from the realm of speculation or guesswork, even though the landowner may have no plan to sell the property or so utilize it at the time of the expropriation. Pointe Coupee Elec. Mem. Corp. v. Mounger, supra. In determining prospective highest and best use of a property, factors to be considered include: proximity to area already developed in a manner compatible with the intended use; action already taken to develop for that use; scarcity of land available for that use; use permitted by zoning ordinances; use to which the property is being put at time of taking; and the existence of offers to buy property by those wanting to develop it for the intended use. Pointe Coupee, supra; City of New Orleans v. Cloutet, 296 So.2d 357 (La.App. 4th Cir.1974).
Because the amount awarded was the amount prayed for in the expropriation petition, appellants assert, "... the court apparently based its decision entirely on the testimony of the hospital's witness, Mr. Stumpf...." Appellants take issue with Mr. Stumpf's appraisals and argue that reliance by the trial court upon his selection of comparables was error and further that such appraisals do not reflect a proper application of the factors articulated in Pointe Coupee, supra, in determining the highest and best use of appellants' properties.
A trial judge in an expropriation case is granted much discretion in weighing the testimony of experts, and his finding of value, based on such evidence, should not be disturbed unless clearly erroneous. Pointe Coupee, supra; State Department of Highways v. Kornman, 336 So.2d 220 (La.App. 1 Cir.1976). Value of expropriated property is solely a question of fact and the trial court's determination of value will carry the same weight as any other finding of fact and the manifest error rule applies on appeal. Louisiana Resources Co. v. Greene, 406 So.2d 1360 (La. App.3d Cir.1981), writ denied 412 So.2d 84 (La.1982).
John F. Stumpf, Jr. was qualified as an expert in the fields of real estate appraisal and commercial real estate appraisal and testified on behalf of the Hospital. Mr. Stumpf appraised the McKean property on July 16, 1981 and on March 19, 1984. The Hospital attempted to introduce evidence concerning the 1981 appraisal at trial, but the testimony was objected to as obsolete by counsel for appellant Schmitt. The court sustained the objection and Mr. Stumpf then went on to testify that his 1984 appraisal concluded commercial or medical office use was the highest and best use of the McKean property based on its size and location.
The market approach of comparable sales was considered by Stumpf to be the best method for conducting the appraisal. The comparables that he considered most reliable included property located near the Hospital on Avenue B, Avenue D and on Wichers Drive, referred to as "Doctors' Row." The sales of these properties included a parcel on the corner of Wichers Drive and Avenue C which sold in December of 1982 for Six Dollars ($6) per square foot; a parcel on the corner of Avenue B and Wichers Drive which sold in March, 1983 for Four Dollars and Thirteen Cents ($4.13) per square foot; and a parcel on Avenue B in Hope Haven Subdivision which sold in February, 1982 for Six Dollars and Twenty-Five Cents ($6.25) per square foot. Based on this information, Mr. Stumpf, in his March, 1984 appraisal, valued the McKean property at Six Dollars and Twenty-Five Cents ($6.25) per square foot, for a total of One Hundred Eighty Thousand Dollars ($180,000).
It was clearly the opinion of Mr. Stumpf that commercial property located on Avenue D and on Wichers Drive is more valuable than property located on Avenue B. The reasons include: (1) that West Jefferson General Hospital fronts on Avenue D and that Avenue B is much less accessible to traffic; (2) the access to Avenue B is hampered because the downramp of the *770 elevated expressway leads to Avenue D; (3) the traffic traveling west to east approaches the first turn to the Hospital at Avenue D (or Barataria Boulevard to Wichers); and (4) there is no cross street at Avenue B.
A more recent sale in the area was effected in April of 1984, a month after the appraisal was made. This property, located on the southeast corner of Wichers and Avenue C, contained 42,586 square feet and was sold by Dr. Morton Brown to West Jefferson Plaza One, Ltd., for a unit price of Twelve Dollars and Forty-Four Cents ($12.44). Mr. Stumpf had no explanation why this property sold for twice the amount of the other properties that he had listed as comparables. Mr. Stumpf did, however, consider the April, 1984 sale and raised his appraisal of the McKean property to a "top dollar" figure of Eight Dollars ($8) per square foot. This raised the value of the property to Two Hundred Thirty Thousand Four Hundred Dollars ($230,400).
Mr. Stumpf also appraised the Guillot property on August 24, 1984 at the request of the Hospital. The Guillot property is a single 30' X 120' lot. Mr. Stumpf determined that despite the proximity of the lot to West Jefferson General Hospital, the highest and best use of the property would be residential. The prevalent factor weighing against commercial development of the property is its size. A parcel of commercial property with a thirty foot frontage would limit parking accomodations to four cars. A multi-storied building would have to be serviced with stairs and vertical shafts for proper ingress and egress and to meet the fire code. Mr. Stumpf was of the opinion that a commercial building on this lot would be unfeasible and, in effect, useless.
Mr. Stumpf again utilized the market data approach and a research of comparable sales was the basis for his appraisal of the Guillot property at Forty Thousand Dollars (40,000). He further testified that had he appraised the lot as commercial property, it would have been significantly less than $40,000.
After a complete and thorough review of the record, including appellants' real estate appraisal expert Mr. Marschner's testimony and appraisal report, we cannot say the trial court erred in relying upon the expert opinion given by appellee's witness. Additionally, based on the record before us, we find no error in the trial court's factual determination as to the value of the property expropriated.
Appellant Schmitt contends that he was dismissed from the expropriation suit, despite the existence of a genuine issue of material fact concerning his right to be compensated as an option holder.
Appellants admit that the Hospital has had an interest in their property for over fifteen years. They were also well aware that the Hospital had already purchased the properties of several of their neighbors. Appellant Schmitt was equally informed of the ongoing events as he had appraised Mrs. Vivian Johansen's property and was recommended by her to Mrs. McKean.
During the continuing negotiations, on July 16, 1983, Schmitt appraised the McKean property. On August 16, 1983, the Hospital mailed, via certified letters, final and best offers to both the McKeans and Guillots. Subsequently, Schmitt executed an option to purchase the McKean property on August 17, 1983, and an option to purchase the Guillot property on August 28, 1983.
The record bears out that because of his protracted involvement in the continuing activities concerning these properties, as well as others already purchased, Schmitt was well aware of the Hospital's ambition to acquire the McKean and Guillot property. In response to the Hospital's request for admissions, Schmitt admitted that at the time the option to purchase the McKean property was executed, he was aware that the Hospital had warned the property owners that the Hospital would exercise its expropriation powers against the property if the owners were unwilling to sell at the sum offered. Likewise, he acknowledged, through deposition, that at the time he entered into the option with the Guillots on *771 August 28, 1983, he was aware that the Hospital had plans to expropriate that property also, although he did not believe that the Hospital would actually go through with it.
Under the holding of State Department of Highways v. Patout, 236 So.2d 40 (La. App.3d Cir.1970), reversed on other grounds 258 La. 1193, 249 So.2d 179 (1971), we find Schmitt to have been in bad faith and therefore properly dismissed. Schmitt's lengthy involvement prior to the hospital's final and best offer letters coupled with his actions taken only after those letters were sent, makes it evident that Schmitt knew of the coming expropriation and his options were apparent attempts at setting artificially high prices.
Accordingly, the judgment appealed is affirmed with appellants to pay all costs of this appeal.
AFFIRMED.